IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARK THOMAS CAVE, | § | No. 1:25-cv-00590-DAE |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| CITY OF AUSTIN, TEXAS, | § | |
| MAYOR KIRK WATSON, | § | |
| | § | |
| *Defendants*. | § | |

<u>OMNIBUS ORDER ADOPTING REPORT & RECOMMENDATION,
GRANTING MOTION TO DISMISS, AND DENYING ALL OTHER MOTIONS</u>

Before the Court is the Order and Report and Recommendation of the United States Magistrate Judge. (Dkt. # 144.) Also before the Court is Defendants' Motion to Dismiss. (Dkt. # 160.) The Court **ADOPTS** the Report and Recommendation in its entirety and **GRANTS** Defendants' Motion to Dismiss (Dkt. # 160). The Court therefore **DENIES AS MOOT** all other pending motions in this case.

BACKGROUND

On April 18, 2025, Defendants City of Austin and Mayor Kirk Watson ("Defendants") removed this case from state court. (Dkt. # 1.)

Cave's Original Complaint filed in state court alleges that when he was visiting his brother at a nursing home in Austin on November 11, 2024, he was

1

forcefully removed by six Austin Police Department Officers. (Dkt. # 1-3 at 3–4.) Plaintiff alleges he engaged in no behavior which warranted removal and alleges he was removed due to unlawful discrimination based on his sexual orientation as a gay man and status as an individual experiencing homelessness. (Id. at 4.) Cave further alleges that his brother passed away on December 30, 2024, and that due to alleged interventions by the police officers, he was unable to share Thanksgiving, Christmas Eve, or Christmas Day with his brother. (Id.) The Original Complaint brings two counts: (1) discrimination under Texas Law, and (2) excessive force and wrongful ejection. (Id. at 5.)

On May 13, 2025, the court granted Cave leave to amend his complaint by May 26, 2025. (See Dkt. # 10.) Cave did not amend his complaint by that date. A Scheduling Order was entered with a deadline for amended pleadings to be filed by July 15, 2025. (Dkt. # 20.) Defendants then filed a Motion for Judgment on the Pleadings as to Cave's Original Complaint on June 13, 2025. (Dkt. # 23.)

Cave then filed an Amended Complaint on July 3, 2025. (Dkt. # 28.) The Amended Complaint adds that "[t]he discriminatory actions were coordinated between multiple city agencies and entities, demonstrating a custom, policy, or practice of discrimination against homeless individuals and members of the LGBTQ+ community." (Id. at 3.) The Amended Complaint also adds allegations

2

that the Austin Police Department engaged in unlawful searches of his residence and issued invalid no-trespass orders. (Id. at 3–4.) That Amended Complaint brings eight causes of action for (1) violation of the Fourteenth Amendment (equal protection); (2) violation of the Fourteenth Amendment (substantive due process); (3) violation of the First Amendment (freedom of association); (3) violation of the Fourth Amendment (right against unreasonable searches and seizures); (5) retaliation for the exercise of constitutional rights; (6) municipal liability under 42 U.S.C. § 1983; (7) intentional infliction of emotional distress, and (8) negligence. (Id. at 5–8.) The alleged constitutional violations are brought pursuant to 42 U.S.C. § 1983.

The same day Cave filed his Amended Complaint, July 3, 2025, he filed a Motion for Leave to File a Second Amended Complaint. (Dkt. # 31.) He sought to add thirteen defendants. (Id. at 3.) Cave similarly filed additional motions for leave to amend, a motion to add his deceased brother as a plaintiff, and 13 other motions to join additional defendants. (Dkt. ## 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 52, 71, 72, and 76.) Defendants City of Austin and Mayor Watson filed a response in opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint (Dkt. # 31) and the motions for joinder (Dkt. ## 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 52), arguing generally that Plaintiff failed to justify the need for an additional complaint or establish how the proposed

defendants relate to the specific allegations in Plaintiff's First Amended Complaint. (Dkt. # 61 at 1–2.)

The Magistrate Judge construed Cave's motions to join as motions for leave to amend his complaint. (Dkt. # 144 at 4.) Cave did not attach proposed amendments to the motions to join as required under Local Rule CV-7(b). He did so only for the motion to amend filed on July 16, 2025. (See Dkt. # 76.)

As of July 16, 2025, Cave had made no less than forty filings in the case in the prior two weeks. (Dkt. # 78.) The Court therefore issued an Order Requiring Leave to File. (Id.) Since entry of that Order, Cave has continued to file—including without requesting leave. Since that time, Cave has made no less than ninety-five additional filings.

On August 21, 2024, Magistrate Judge Howell issued an Order and Report & Recommendation (Dkt. # 144) concerning: Cave's motions to amend complaint (Dkt. ## 31, 35); Cave's motions for leave to file a second amended complaint (Dkt. ## 72, 76); Cave's motions for joinder (Dkt. ## 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 52, 71); Defendants' motion to dismiss (Dkt. # 23), and all related briefing. The Report also concerned Cave's motions to extend scheduling order deadlines (Dkt. ## 65, 69, 70), Cave's motion for voluntary dismissal (Dkt. # 26), Cave's motion to withdraw his motion for voluntary

dismissal (Dkt. # 33), and Cave's motion to direct a criminal investigation into his brother's alleged wrongful death (Dkt. # 64).

The Report recommended denying Cave's timely motions to amend for failure to attach any proposed amended complaints and denying Cave's untimely motion to amend with the proposed amendment for failure to show good cause. (Dkt. # 144 at 7.) The Report additionally recommended denying Cave's motions to extend the scheduling order deadlines for failure to show good cause. (Id. at 11.) The Report concluded by recommending the Court find the live complaint in this case to be Cave's First Amended Complaint (Dkt. # 28). (Id. at 11.) The Report thus further recommended denying Defendants' earlier-filed motion to dismiss (Dkt. #23) as moot. (Dkt. # 144 at 11.) Finally, the Report recommended denying Cave's motion for an order directing criminal investigation (Dkt. # 64). (Dkt. # 144 at 13.)

Cave was granted an extension to file objections to the Report & Recommendation and did so on September 5, 2025. (Dkt. # 148.) Additionally, on September 15, 2025, Defendants City of Austin and Mayor Kirk Watson filed a Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. # 28). (Dkt. # 160.) Plaintiff filed a response in opposition on the same day, though corrected that response on September 18, 2025. (Dkt. ## 161, 175, 176.)

For the reasons discussed below, the Court **ADOPTS** the Report & Recommendation (Dkt. # 144).  Furthermore, finding the motion to dismiss to be properly directed to the operative complaint, and that Plaintiff had an opportunity to respond, the Court **GRANTS** Defendants' Motion to Dismiss (Dkt. # 160).  All other pending motions are therefore **DENIED** as **MOOT**.

DISCUSSION

I.  Report & Recommendation

The Court first addresses the Report and Recommendation of the Magistrate Judge.  (Dkt. # 144.)

A.  Legal Standard

The Court must conduct a *de novo* review of any of the Magistrate Judge's conclusions to which a party has specifically objected.  See 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider.  Thomas v. Arn, 474 U.S. 140, 151 (1985).  A district court need not consider "[f]rivolous, conclusive, or general objections."  Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987). "A judge of the court may accept, reject, or modify, in whole

or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Findings to which no specific objections are made do not require de novo review; the Court need only determine whether the Recommendation is clearly erroneous or contrary to law.  United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

B. Analysis

Plaintiff filed objections to the Report & Recommendation across various filings.  (See Dkts. ## 146, 147, 148.)  Plaintiff's specific objections are that (1) the Magistrate Judge incorrectly applied Federal Rule of Civil Procedure 16(b), (2) leave to amend the complaint should be granted because Defendants themselves requested Plaintiff file an additional amended complaint, (3) there has been an alleged pattern of procedural disparity which has favored Defendants, and (4) denying leave to amend prevents Plaintiff from presenting evidence which would be relevant to a motion for summary judgment he previously filed.  (Dkt. # 148.)  The Court addresses each argument in turn.

First, the Report & Recommendation recommended denying Cave's untimely motion to amend (Dkt. # 76) and motions to extend scheduling order deadlines (Dkt. ## 65, 69, 70) for failure to show good cause.  "A party seeking to amend its pleadings after a deadline has passed must demonstrate good cause for

needing an extension." E.E.O.C. v. Serv. Temps Inc., 679 F.3d 323, 333–34 (5th Cir. 2012). To determine whether the moving party has established good cause, courts consider four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." Id. at 334 (quoting Fahim v. Marriott Hotel Servs., Inc., 551 F.3d 344, 348 (5th Cir. 2008)).

The Magistrate Judge first noted that Cave failed to explain his failure to timely move for leave to amend. (Dkt. # 144 at 9.) The Magistrate Judge also observed that Cave filed several motions to amend the complaint and join additional parties prior to the July 15 deadline, which indicates he had the ability to file timely motions to amend. (Id.) The Magistrate Judge additionally found Defendants would likely be prejudiced by an additional amendment, given that Cave sought to add causes of action that would change the scope and subject matter of the case to include an investigation into the circumstances surrounding Cave's brother's death. (Id. at 10.) Finally, although a continuance would be available, it would not assist in clarifying the operative pleadings and advancing the case. (Id.) In fact, Cave's repeated filings—which at the time the Report & Recommendation was filed were fewer than they are today—had already begun to stall the resolution of the case by making it difficult for Defendants to identify

8

operative pleadings. (Dkt. # 61 at 4.) The Court finds the Magistrate Judge correctly applied Rule 16, and thus **OVERRULES** Plaintiff's first and fourth objections listed above.

Second, Plaintiff suggests that Defendants asked the Court that Plaintiff be permitted leave to file an amended complaint. (Dkt. # 147.) That argument relates to the relief Defendants sought in their Response in Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint and to Plaintiff's Motions for Joinder. (Dkt. # 161.) The full conclusion of Defendants' reply is as follows:

> Defendants City of Austin and Mayor Kirk Watson respectfully request that the Court deny Plaintiff's Motion for Leave to File Second Amended Complaint and Plaintiff's Joinder Motions [Docs. 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 52]. In the alternative, Defendants ask that the Court permit Plaintiff to file one final amended complaint containing all defendants and all claims.

(Id. at 5–6.) As indicated, Defendants in fact opposed granting Cave leave to amend, and argued only in the <u>alternative</u> that—were the Court to grant leave—Cave be granted leave to file one amended complaint. Finding Plaintiff's objection to be inaccurate, the Court **OVERRULES** the objection.

Finally, with respect to Plaintiff's objection concerning procedural disparities, Plaintiff appears to argue it was improper for the Magistrate Judge to enter a Scheduling Order based on Defendants'

9

proposal. (See Dkts. ## 17, 20.) However, a district court has "exceedingly wide" discretion as to scheduling decisions. Versai Mgmt. Corp. v. Clarendon Am. Ins. Co., 597 F.3d 729 (5th Cir. 2010); see also Ganther v. Ingle, 75 F.3d 207, 212 (5th Cir. 1996) ("[S]cheduling is a matter which is generally left to the discretion of the district court."). Finding the Magistrate Judge was well within his discretion in adopting Defendants' proposed scheduling order, the Court **OVERRULES** this objection.

Having overruled Plaintiff's objections and otherwise finding no clear error to the unobjected to portions, the Court **ADOPTS** the Report in its entirety. Accordingly, Cave's motions to amend or to join, motions to extend the scheduling order, and motion for directing a criminal investigation are **DENIED**. Defendants' motion to dismiss (Dkt. # 23) is thus **DENIED** as **MOOT**. The operative complaint is thus Plaintiff's Amended Complaint (Dkt. # 28).

Moreover, Cave's motion to dismiss (Dkt. # 26) is **DENIED** in light of his indication at the scheduling conference that he wishes to proceed with the case. Cave's motion to withdraw the motion to dismiss (Dkt. # 33) is thus **DENIED** as **MOOT**.

II.   Motion to Dismiss

On September 15, 2025, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint (Dkt. # 28).  (Dkt. # 160.)  The motion is directed toward the operative complaint.  (Dkt. # 160 at 1 (citing Dkt. # 28).)  Plaintiff responded in opposition on September 18, 2025.  (Dkt. ## 161, 175, 176.)  The motion has been briefed and is ripe for decision.

C. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)).

The court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a Court may take judicial notice." Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011) (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

11

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, a court reviewing a complaint "[is] not bound to accept as true a legal conclusion couched as a factual allegation." Id.

When reviewing a *pro se* plaintiff's complaint, the court must construe a plaintiff's allegations liberally, holding the plaintiff to less stringent pleading standards than those applicable to lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see Haines v. Kerner, 404 U.S. 519, 520–21 (1972). However, a plaintiff's *pro se* status does not offer him "an impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets." Farguson v. MBank Houston, N.A., 808 F.2d 358, 359 (5th Cir. 1986).

D. Analysis

Defendant first argues Plaintiff's Section 1983 claims should be dismissed because Plaintiff has failed to plead any policy or custom of the Austin Police Department or City of Austin which led to the constitutional violations.

1. Municipal Liability

Section 1983 provides, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. In Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 659 (1978) (emphasis in original), the Supreme Court held that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Accordingly, an isolated unconstitutional act committed by a municipal employee will rarely invoke liability. Sanchez v. Gomez, 283 F. Supp. 3d 524, 533 (W.D. Tex. 2017), appeal dismissed sub nom. Sanchez v. City of El Paso, Texas, No. 17-50953, 2018 WL 1989633 (5th Cir. Feb. 22, 2018).

Moreover, the Supreme Court recognized that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell, 436 U.S. at 691; Sanchez, 283 F. Supp. 3d at 533. This official municipal policy requirement limits municipal liability to official policies or customs "which the municipality has officially sanctioned or ordered." Sanchez, 283 F. Supp. 3d at 533. Ultimately, the

13

alleged unconstitutional conduct must be directly attributable to the municipality through some sort of official policy or a widespread custom that, "although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).

Following the Fifth Circuit Court of Appeals' interpretation of the Supreme Court's guidance on municipal liability, Plaintiff in this case must establish "three attribution principles" to state a viable Section 1983 claim against the City. Sanchez, 283 F. Supp. 3d at 533. Specifically, under the Fifth Circuit's municipal liability test, Plaintiff's complaint must identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." Id. The policy element "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011) (citation omitted). To establish an inadequate training claim a plaintiff must also allege deliberate indifference of the policymakers. City of Canton v. Harris, 489 U.S. 378, 392 (1989).

a. Policies, Procedures, Practices, and Customs

Plaintiff's complaint fails to allege an official policy, practice or custom which is the moving force behind the alleged constitutional violations. See Sanchez, 283 F. Supp. 3d at 533. Plaintiff's complaint alleges that on November 11, 2024, and multiple times following that date, he was either removed or prevented from visiting his brother at a nursing facility. (Dkt. # 28 at ¶¶ 9–11, 18–21.) Although the Complaint generally asserts that "[t]he City of Austin maintained policies and customs that were the moving force behind the constitutional violations described," (Dkt. #28, ¶ 38) Plaintiff fails to allege specific facts in support of that contention.[1] Plaintiff's claims for constitutional violations against the City therefore fail. The Court thus **DISMISSES** Plaintiff's claims for constitutional violations.

b. Failure to Train

To the extent Plaintiff brings a claim on a theory of failure to train, any such claim also fails. (See Dkt. # 28 at ¶ 36.)

---

[1] The Court has considered Plaintiff's response in opposition, as well as the various filings and videos which Plaintiff indicate support his claims. (See Dkt. ## 175, 147, 158–59, 183, 187.) The videos provided are recordings of Mr. Cave and thus do not support the existence of an official policy or custom. Moreover, to the extent any video supported the contention Plaintiff makes—which is that APD officers were recorded as failing to answer whether they have been adequately trained—it would be insufficient to support his claim. A non-answer as to whether an officer has received training is not an affirmative indication that an officer has not received training.

To prevail on a failure-to-train theory, a plaintiff must plead facts plausibly establishing "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." Zarnow v. City of Wichita Falls, 614 F.3d 161, 170 (5th Cir. 2010). However, courts should treat failure to train claims with a high degree of caution. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011). A plaintiff must demonstrate "at least a pattern of similar incidents" to establish municipal liability. Snyder v. Trepagnier, 142 F.3d 791, 798 (5th Cir. 1998) (internal citations omitted).

Plaintiff's Complaint fails to plead any facts which explain how any training procedures were inadequate or defective. Although Plaintiff cursorily asserts in his Complaint that Defendants "engaged in a pattern of harassment," he has not provided information into how the City's training policies were deficient or how any alleged deficient policies led to the alleged violations. Any alleged claim for failure to train therefore fails and is **DISMISSED**.

### c. Retaliation Claim

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." Batyukova v. Doege, 994 F.3d 717, 729–30 (5th Cir. 2021) (quoting Nieves v. Bartlett, 587 U.S. 391, 401 (2019)). A First Amendment retaliation claim requires that a plaintiff plead that (1) he was "engaged in constitutionally protected activity," (2) the defendant's actions caused him to "suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity," and (3) the defendant's "adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct." Keenan v. Tejeda, 290 F.3d 252, 258 (5th Cir. 2002).

The same Monell doctrine as described above pertains to the retaliation claim; Plaintiff "must identify a policymaker with final policymaking authority and a policy that is the 'moving force' behind the alleged constitutional violation." Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 247 (5th Cir. 2003). Thus, Plaintiff fails to state a retaliation claim for the same reason he fails to state the other Monell claims—he has not alleged a custom or policy which is the moving force behind the violation. The Court thus **DISMISSES** Plaintiff's claim for retaliation.

2. <u>State Tort Law Claims</u>

Plaintiff also brings claims for intentional infliction of emotional distress and negligence. As an initial matter, "[u]nder the common-law doctrine of sovereign immunity, a municipality is immune from tort liability for its own acts or the acts of its agents unless the Texas Tort Claims Act ['TTCA'] waives immunity." <u>Hobart v. City of Stafford</u>, 784 F. Supp. 2d 732 (S.D. Tex. 2011) (quoting City of Amarillo v. Martin, 971 S.W.2d 426, 427 (Tex. 1998).) The Texas Tort Claims Act specifically exempts intentional torts from waiver. Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2). Thus, Plaintiff's claim for intentional infliction of emotional distress fails.

The Court finds Plaintiff fails to state a claim for negligence. To maintain a negligence cause of action, a plaintiff must show (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of the duty; and (3) damages proximately caused by the breach. <u>D. Houston, Inc. v. Love</u>, 92 S.W.3d 450, 454 (Tex. 2002). Plaintiff's Complaint recites the elements of a negligence claim, but does not provide any facts in support. For example, Plaintiff does not explain what specific duty Defendants owed to Plaintiff and subsequently violated. Because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to state a claim, the Court **GRANTS**

18

Defendants' motion as to this motion as to this claim and dismisses the claim. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### 3. Claims Against Mayor Kirk Watson

Finally, Plaintiff brings his claims against Defendant Mayor Kirk Watson. However, he does not provide any specific facts as to how the Mayor is involved, nor does he identify him as the final policymaker for Monell purposes. Given the lack of any facts which indicate how the Mayor is involved, the Court finds Plaintiff has failed to state a claim. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## CONCLUSION

For the reasons above, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation (Dkt. # 144) and **GRANTS** Defendant's Motion to Dismiss (Dkt. # 160).

The Clerk of the Court is **INSTRUCTED** to **CLOSE THE CASE**.

Dated: October 10, 2025.

_____
David Alan Ezra
Senior United States District Judge